```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
MICHAEL BAAH as Guardian over NANA          :
BAAH, an Infant,                             :      06 Civ. 11514 (SHS)
                          Plaintiff,         :
                                             :
             -against-                       :      OPINION & ORDER
                                             :
                                             :
VIRGIN ATLANTIC AIRWAYS LIMITED,             :
                                             :
                          Defendant.         :
---------------------------------------------------------------x
```

SIDNEY H. STEIN, U.S. District Judge.

Michael Baah brings this action for damages on behalf of his son Nana for injuries allegedly sustained by Nana when he was burned by a hot beverage while traveling on Virgin Atlantic Flight No. VS025 from London's Heathrow International Airport to New York's JFK International Airport on August 24, 2006. The airline has moved to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction, or, alternatively, for summary judgment pursuant to Fed. R. Civ. P. 56. The motion to dismiss is granted because this Court does not have subject matter jurisdiction over this dispute pursuant to Article 33 of the Montreal Convention.

I.    LEGAL STANDARD

   A.    Fed. R. Civ. P. 12(b)(1)

Before addressing the merits of a given action, a federal court must consider the threshold question of whether it has subject matter jurisdiction to hear the case. See United Republic Ins. Co., in Receivership v. Chase Manhattan Bank, 315 F.3d 168, 170-71 (2d Cir. 2003); Concourse Rehab. & Nursing Ctr. Inc. v. DeBuono, 179 F.3d 38, 43 (2d Cir. 1999). "A case is properly

dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000); see also Fed. R. Civ. P. 12(b)(1).  The burden rests on the party invoking the court's authority to establish that the court possesses subject matter jurisdiction over the action. See Shenandoah v. Halbritter, 366 F.3d 89, 91 (2d Cir. 2004). That party must show by a preponderance of the evidence that subject matter jurisdiction exists. See Luckett v. Bure, 290 F.3d 493, 497 (2d Cir. 2002).  In reviewing a motion to dismiss for lack of subject matter jurisdiction, a court may consider material outside the complaint. See Makarova, 201 F.3d at 113.

B. The Montreal Convention

On November 4, 2003, before any of the events involved in this litigation took place, the treaty popularly known as the Montreal Convention entered into force in the United States, superseding a prior air carriage treaty commonly known as the Warsaw Convention.[1] See Ehrlich v. Am. Airlines, Inc., 360 F.3d 366, 371 & n.4 (2d Cir. 2004).  The United States Senate gave its advice and consent to ratification of the Montreal Convention on July 31, 2003,[2] and the United

---

[1] The Montreal Convention is formally known as the Convention for the Unification of Certain Rules for International Carriage by Air Done at Montreal, opened for signature May 28, 1999, S. Treaty Doc. No. 106-45, at 27 (2000), 2242 U.N.T.S. 350.  The agreement is "the product of an effort by the International Civil Aviation Organization, a specialized agency of the United Nations, to reform the Warsaw Convention so as to harmonize the hodgepodge of supplementary amendments and intercarrier agreements of which the Warsaw Convention system of liability consists." Ehrlich v. Am. Airlines, Inc., 360 F.3d 366, 371 n.4 (2d Cir. 2004) (internal quotation marks and citation omitted).  The Warsaw Convention, in turn, is a multilateral treaty that regulates, *inter alia*, liability for international air carriers.  See Avero Belg. Ins. v. Am. Airlines, Inc., 423 F.3d 73, 75 n.2 (2d. Cir. 2005).  Originally adopted in Warsaw in 1929, the treaty was amended at The Hague in 1955 and again at Montreal in 1975. See Convention for the Unification of Certain Rules Relating to International Transportation by Air, Oct. 12, 1929, 49 Stat. 3000 (1934), 137 L.N.T.S. 11, reprinted in note following 49 U.S.C. § 40105; The Convention for The Unification of Certain Rules Relating to International Carriage by Air Signed at Warsaw on 12 October 1929 as Amended by the Protocol Done at The Hague on 28 September 1955, 478 U.N.T.S. 371; Montreal Protocol No. 4 To Amend the Convention for the Unification of Certain Rules Relating to International Carriage by Air Signed at Warsaw on 12 October 1929 as Amended by the Protocol Done at The Hague on 28 September 1955, 2145 U.N.T.S. 36.

[2] See 149 Cong. Rec. S10870 (daily ed. July 31, 2003).

States deposited its instrument of ratification on September 5, 2003.[3] Notably, the Montreal Convention is self-executing and creates a private right of action in U.S. courts.[4]

The parties agree, as does the Court, that the Montreal Convention exclusively governs plaintiff's rights against Virgin Atlantic because the alleged physical injuries to Nana Baah were sustained during "international carriage" by air within the meaning of the convention, which is enforceable in both the United States and the United Kingdom.[5] See Def.'s Mem. in Support of Motion to Dismiss ("Def. Supp.") at 4-6; Pl.'s Mem. in Opposition to Motion to Dismiss ("Pl. Opp.") at 3; Oral Argument, Feb. 2, 2007; see also Montreal Convention, art. 29; Paradis v. Ghana Airways Ltd., 348 F. Supp. 2d 106, 110-11 (S.D.N.Y. 2004).

---

[3] See U.S. Dep't of State Press Release on Ratification of the 1999 Montreal Convention (Sept. 5, 2003), at http://www.state.gov/r/pa/prs/ps/2003/23851.htm.

[4] "'[A] self-executing treaty is domestic law. It 'operates of itself' as 'a rule for the Court,' 'equivalent to an act of the legislature.'" Avero Belg. Ins., 423 F.3d at 78 n.5 (quoting Medellin v. Dretke, 544 U.S. 660, 868; 125 S.Ct. 2088; 161 L. Ed. 2d 982 (2005) (O'Connor, J., dissenting) (quoting Foster v. Neilson, 27 U.S. (2 Pet.) 253, 314, 7 L. Ed. 415 (1829))). "Self-executing treaties are those that immediately create rights and duties of private individuals which are enforceable and are to be enforced by domestic tribunals." Flores v. S. Peru Copper Corp., 414 F.3d 233, 257 n.34 (2d Cir. 2003) (internal quotation marks, alterations, and citations omitted.). See also Standt v. City of New York, 153 F. Supp. 2d. 417, 423 n.3 (S.D.N.Y. 2001) ("Courts have assessed whether a treaty is 'self-executing' in several ways, including, most commonly, asking whether the treaty creates a private right of action.") By contrast, "non-self-executing treaties require implementing action by the political branches of government or are otherwise unsuitable for judicial application." Flores, 414 F.3d at 257 n.34 (internal quotation marks, alterations, and citations omitted.) "An international agreement of the United States is 'non-self-executing' (a) if the agreement manifests an intention that it shall not become effective as domestic law without the enactment of implementing legislation, (b) if the Senate in giving consent to a treaty, or Congress by resolution, requires implementing legislation, or (c) if implementing legislation is constitutionally required." Restatement (Third) Of Foreign Relations Law §111(4) (1987). The Senate Foreign Relations Committee's report on the Montreal Convention explicitly concluded that the treaty provides the basis for a private right of action in U.S. courts and that no separate implementing legislation was required. See S. Exec. Rep. 108-8, at 3, 6 (2003). See also 149 Cong. Rec. S10870 (daily ed. July 31, 2003) (statement of Sen. Biden).

[5] "For the purposes of this Convention, the expression "international carriage" means any carriage in which, according to the agreement between the parties, the place of departure and the place of destination, whether or not there be a break in the carriage or a transhipment, are situated either within the territories of two States Parties, or within the territory of a single State Party if there is an agreed stopping place within the territory of another State, even if that State is not a State Party." Montreal Convention, art. 1(2). The Montreal Convention entered into force in the United States on November 4, 2003 and in the United Kingdom on June 28, 2004. See International Civil Aviation Organization, Treaty Collection, at http://www.icao.int/icao/en/leb/mtl99.pdf (last visited February 6, 2007).

The issue for resolution, therefore, is whether this Court has subject matter jurisdiction over plaintiff's claims arising out of the Montreal Convention.  Article 33(1) of the convention provides four grounds upon which a court may base its jurisdiction:

> An action for damages must be brought, at the option of the plaintiff, in the territory of one of the States Parties, either before the court of the domicile of the carrier or of its principal place of business, or where it has a place of business through which the contract has been made or before the court at the place of destination.

Montreal Convention, art. 33(1).  Article 33(2) provides that a fifth basis for jurisdiction is, in certain situations, the state of principal and permanent residence of the passenger.  Montreal Convention, art. 33(2).  Thus, a plaintiff may bring an action in the United States for damages pursuant to the Montreal Convention only when the United States is: (1) "the domicile of the carrier"; (2) the "principal place of business" of the carrier; (3) the place where the carrier has a "place of business through which the contract has been made"; (4) "the place of destination"; or (5) the "principal and permanent residence" of the passenger.

II.     DISCUSSION

The parties agree that bases of jurisdiction 1, 2, 3 and 5 set forth above do not confer jurisdiction on this Court because the United Kingdom is Virgin Atlantic's domicile and principal place of business; Nana Baah's passenger ticket was purchased in the United Kingdom; and plaintiff is a resident of the United Kingdom, not the United States.  See Pl. Opp. at 4; Def. Supp. at 7; Def. Statement of Undisputed Material Facts dated Nov. 29, 2006 ("Def. St. Mat. Facts"), ¶ 5; Summons dated Sept. 19, 2006, attached as Exhibit A to Def. St. Mat. Facts; Oral Argument, Feb. 2, 2007.  Accordingly, the Court need not consider whether any of those grounds confer jurisdiction on this Court.

Instead, plaintiff contends that because Nana Baah's destination at the time he was injured was New York, this Court has jurisdiction over the action pursuant to the fourth basis of jurisdiction provided by Article 33(1) – "place of destination." Plaintiff acknowledges that Nana Baah's airline ticket "provided for round trip transportation, beginning and ending in London, England, with a stop in New York," but contends that New York should be construed as Nana's place of destination because "the intention of the infant as to when and if the infant would fly back to England was not definitive at the time of the accident." (Pl.'s Statement of Facts dated Dec. 11, 2006, ¶4.)

The Court's inquiry begins with the text.[6] As noted above, Article 33(1) of the Montreal Convention provides as follows:

> An action for damages must be brought, at the option of the plaintiff, in the territory of one of the States Parties, either before the court of the domicile of the carrier or of its principal place of business, or where it has a place of business through which the contract has been made or before the court at the place of destination.

Montreal Convention, art. 33(1). Article 28(1) of the Warsaw Convention, in turn, provides essentially the same in the following words:

> An action for damages must be brought, at the option of the plaintiff, in the territory of one of the High Contracting Parties, either before the Court having jurisdiction where the carrier is ordinarily resident, or has his principal place of business or has an establishment by which the contract has been made or before the Court having jurisdiction at the place of destination.

---

[6] In interpreting Article 33(1), the Court looks, of course, to the text itself and to case authority construing that text; it looks as well to the Vienna Convention on the Law of Treaties, opened for signature May 23, 1969, 1155 U.N.T.S. 331, as "an authoritative guide." See Chubb & Son, Inc. v. Asiana Airlines, 214 F.3d 301, 309 & n.5 (2d Cir. 2000) (recognizing the Vienna Convention as an "authoritative guide" to the customary international law of treaties). Article 31(1) of the Vienna Convention provides that "[a] treaty shall be interpreted in good faith in accordance with the ordinary meaning to be given to the terms of the treaty in their context and in the light of its object and purpose." Vienna Convention, art. 31(1). Article 32, in turn, provides that "[r]ecourse may be had to supplementary means of interpretation, including the preparatory work of the treaty and the circumstances of its conclusion," where the interpretation derived from the procedures of Article 31 "leaves the meaning ambiguous or obscure." Vienna Convention, art. 32.

Warsaw Convention, art 28(1).  Although the ordinary meaning of the text in each treaty's provision leaves ambiguous whether "place of destination" refers to the final point of destination on a round-trip ticket or the endpoint of the outbound portion of the trip, the provisions are extremely similar in language and substance.

In the context of the Warsaw Convention, it is well established that "the place of final destination for purposes of jurisdiction under the Warsaw Convention is the return city appearing on a round-trip ticket."  Klos v. Polskie Linie Lotnicze, 133 F.3d 164, 167 (2d Cir. 1997).  See also Schopenhauer v. Compagnie Nationale Air France, 255 F. Supp. 2d 81, 85 (E.D.N.Y. 2003).  Furthermore, determination of "the final destination under the Warsaw Convention is governed by the contract between the parties, using basic contract principles," not by the "subjective intent of the parties."  Klos, 133 F.3d at 167-68.  If that principle controls, there is no question that Nana Baah's place of destination must be construed as London, not New York.  However, plaintiff contends that because the Montreal Convention "is an entirely new and different treaty, based on entirely new ideals and principles," the case law interpreting the jurisdictional provisions of the Warsaw Convention provides no support for the proposition that "plaintiff's 'place of destination' was London instead of New York."  (Pl. Opp. at 7.)

The Court recognizes that "[t]he Montreal Convention is not an amendment to the Warsaw Convention," but rather is "an entirely new treaty that unifies and replaces the system of liability that derives from the Warsaw Convention." Ehrlich, 360 F.3d at 371 n.4.  As compared to the Warsaw Convention, the Montreal Convention is "a treaty that favors passengers rather than airlines."  Id. (citations omitted); see also Weiss v. El Al Isr. Airlines, Ltd., 433 F. Supp. 2d 361, 365 (S.D.N.Y. 2006).  Nonetheless, "[d]espite its newly aligned purpose, many of the

provisions of the Montreal Convention closely resemble those of the Warsaw Convention." Weiss, 433 F. Supp. 2d at 365.

For that reason, the dispositive question in this case is whether displacement of the Warsaw Convention by the Montreal Convention requires the Court to interpret Article 33(1) differently than courts have uniformly and clearly interpreted its predecessor, Article 28(1) of the Warsaw Convention. The text of the Montreal Convention does not answer this question, but, as noted above, courts may look to the drafting history of a treaty where the ordinary meaning of a provision is not apparent from the text. See Vienna Convention, art. 32. See also El Al Isr. Airlines, Ltd. v. Tsui Yuan Tseng, 525 U.S. 155, 168, 119 S. Ct. 662; 142 L. Ed. 2d 576 (1999); Commercial Union Ins. Co. v. Alitalia Airlines, S.p.A., 347 F.3d 448, 457 (2d Cir. 2003) (citing Chan v. Korean Air Lines, Ltd., 490 U.S. 122, 134-35, 109 S. Ct. 1676, 104 L. Ed. 2d 113 (1989)). Furthermore, "[r]espect is ordinarily due the reasonable views of the Executive Branch concerning the meaning of an international treaty." El Al Isr. Airlines, Ltd., 525 U.S. at 168. The Senate Foreign Relations Committee's report on the convention, which relied on testimony from the U.S. Department of Transportation and the U.S. Department of State, directly addressed the convention's drafting history with respect to the continued applicability of judicial decisions interpreting the Warsaw Convention:

> In the nearly seventy years that the Warsaw Convention has been in effect, a large body of judicial precedent has been established in the United States. The negotiators of the Montreal Convention intended to preserve these precedents. According to the Executive Branch testimony, "[w]hile the Montreal Convention provides essential improvements upon the Warsaw Convention and its related protocols, efforts were made in the negotiations and drafting to retain existing language and substance of other provisions to preserve judicial precedent relating to other aspects of the Warsaw Convention, in order to avoid unnecessary litigation over issues already decided by the courts under the Warsaw Convention and its related protocols."

S. Exec. Rep. 108-8, at 3 (2003).  See also 149 Cong. Rec. S10870 (daily ed. July 31, 2003) (statement of Sen. Biden) ("[A] large body of judicial precedents has developed during the[ ] seven decades [since the United States became a party to the Warsaw Convention.]  The negotiators intended [ ], to the extent applicable, to preserve these precedents.").[7]

Consistent with that interpretation, this Court has previously relied on cases interpreting a provision of the Warsaw Convention where the equivalent provision in the Montreal Convention was substantively the same.  See Paradis, 348 F. Supp. 2d at 111.  See also Igwe v. Northwest Airlines, Inc., No. H-05-1423, 2007 U.S. Dist. LEXIS 1204, at *10 (S.D.Tex. Jan. 4, 2007); Kalantar v. Lufthansa German Airlines, 402 F. Supp. 2d. 130, 140 n.10 (D.D.C. 2005).

To the extent plaintiff contends that a new interpretation of Article 33(1) is merited because of the purported passenger-friendly focus of the Montreal Convention, the new basis for jurisdiction provided by Article 33(2) undermines that contention.  By enabling passengers to bring a cause of action in their place of principal and permanent residence – a basis for jurisdiction not provided by the Warsaw Convention – the drafters of the Montreal Convention considerably enhanced the available fora in which passengers may bring their claims.[8]  As such, no reinterpretation of Article 33(1) is required for the sake of consistency with the "newly aligned purpose" of the Montreal Convention.

---

[7] See also Paul S. Dempsey & Michael Milde, International Air Carrier Liability: The Montreal Convention of 1999 7 (McGill University Centre for Research in Air & Space Law) (2005) (The drafters of the Montreal Convention "tried, wherever possible, to embrace the language of the original Warsaw Convention and its various Protocols, with the purpose of not disrupting the existing jurisprudence . . . . Thus, the 'common law' of the Warsaw jurisprudence is vitally important to understanding the meaning of the Montreal Convention.").

[8] Indeed, the submittal letter from the U.S. Department of State contained in the transmittal letter from President William J. Clinton that delivered the Montreal Convention to the Senate for its advice and consent described Article 33(2) as "the creation of a 'fifth jurisdiction' to supplement the four bases of jurisdiction provided under the Warsaw Convention."  Message from the President of the United States Transmitting the Convention for the Unification of Certain Rules for International Carriage by Air, Done at Montreal, May 28, 1999, S. Treaty Doc. No. 106-45, at X-XII (2000).  In that light, Article 33(2) reflects the drafters' efforts to enhance passengers' rights under the new treaty, but also implies the intent to preserve the jurisdictional bases established by Article 28(1) of the Warsaw Convention.

In light of the above, the Court finds no reason to interpret the phrase "place of destination" in Article 33(1) of the Montreal Convention differently than courts have interpreted the phrase "place of destination" in Article 28(1) of the Warsaw Convention. The "place of destination" in the context of a round-trip airline ticket is the ultimate destination specified by the contract of carriage between the passenger and the carrier, not the endpoint of the outbound leg of the trip. Klos, 133 F.3d at 167-68. Moreover, the passenger's subjective intent regarding if or when the return trip would be made is irrelevant. Id. In the case of Nana Baah's round-trip ticket, the Court concludes, therefore, that the United Kingdom is the "place of destination" for purposes of Article 33(1) of the Montreal Convention.

III.     CONCLUSION

Because Nana Baah's alleged injuries were sustained during the outbound leg of a round-trip flight whose place of destination was London and no other basis for jurisdiction implicates the United States, Article 33 of the Montreal Convention does not confer subject matter jurisdiction on this Court. Accordingly, Virgin Atlantic's motion to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(1) is granted with prejudice.

Dated:  New York, New York
        February 6, 2007

SO ORDERED:

Sidney H. Stein, U.S.D.J.

9